

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRUCE WASHINGTON,        )
                           )
       Plaintiff,         )
                           )       No. 09 C 2478
     v.                   )
                           )       Judge John W. Darrah
ASSOCIATION FOR INDIVIDUAL )
DEVELOPMENT,            )
                           )
       Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Bruce Washington, brought suit against the Association for Individual Development ("AID" or "Defendant") alleging that his termination violated state and federal law and that AID owed him wages for hours worked. Before the Court is Defendant's motion to dismiss and for a more definite statement.

## BACKGROUND

The following background is taken from Plaintiff's Complaint, the factual allegations of which are accepted as true for purposes of this motion.

Defendant is an Illinois not-for-profit corporation in the business of providing services to individuals with physical or developmental disabilities. Plaintiff worked for Defendant for approximately nine years. At the time of his termination, Plaintiff had been promoted to the position of House Manager. Plaintiff's responsibilities as house manager included overseeing his house's residents and assisting them in their daily life activities. Plaintiff is also responsible for meal preparation and clean-up, medication, doctor's appointments, transportation of residents, mediation of resident disputes, residential emergencies and other matters. Plaintiff worked all day and all night from Wednesday at 6:00 p.m. until Sunday at 10:00 a.m., with the

exception of a daily four-hour break from 10:00 a.m. to 2:00 p.m. Plaintiff was required to

spend the night at Defendant's residence. However, Defendant did not compensate Plaintiff for

hours between 10:00 p.m. and 6:00 a.m. unless there was an emergency during the night.

Nonetheless, Plaintiff often worked before 6:00 a.m. and after 10:00 p.m.

Around April 2006, Plaintiff agreed to serve as House Manager at Surry Hill Apartments

("Surry Hill"). Defendant informed Plaintiff that Surry Hill was only a temporary facility and

that the Surry Hill residents would be moved to a newly donated house once renovation of the

new house was complete. Upon becoming House Manager at Surry Hill, Plaintiff discovered

that Defendant was failing to supply adequate staff to supervise the residents there. Furthermore,

Plaintiff found that Defendant was not providing necessary quality-of-life amenities, including

handicap-accessible toilets and showers, an operable handicap vehicle, accessible laundry

facilities, and an easily accessible emergency-exit ramp. Defendant's failures in this regard led

to unsanitary and unsafe living conditions: residents were often unable to properly use the toilets

and defecated on the floor; soiled bedding and clothing often went unwashed for an entire week;

residents went unsupervised during the night. Furthermore, residents were unable to maneuver

without staff assistance due to heavy carpets. Finally, at one point, two residents were stranded

for two hours in the van used to transport Surry Hill residents after it broke down.

At some point, Defendant informed Plaintiff that despite its earlier statement to the

contrary, Surry Hill residents would not be moved to the newly donated house. Upon learning

this information, Plaintiff complained to Defendant that Defendant was not properly servicing its

clients and was discriminating against Surry Hill residents. On various occasions in the Spring

of 2006, Plaintiff complained to Defendant's director, Joan Wells, and Vice President,

2

Wanda Thomas. In addition, from the Spring of 2006 through his termination, Plaintiff continued to complain in monthly team meetings that Defendant was discriminating against Surry Hill residents.

Initially, Defendant responded to Plaintiff's complaints by accusing him of not being a team-player. When Plaintiff's complaints continued, Defendant retaliated against Plaintiff by prohibiting Plaintiff from taking residents to coffee shops and stores, buying Christmas presents for residents and engaging the residents in similar social activities. When Plaintiff continued to complain, Defendant retaliated against Plaintiff by verbally disciplining him, issuing him unwarranted write-ups and ultimately firing Plaintiff.

On or about April 10, 2007, Defendant sent Plaintiff home after he had worked just half a day because Plaintiff was ill and unable to perform essential functions of the job. Plaintiff spent the following days at home and informed Defendant that he was unable to work due to his illness. On or about April 15, 2007, Plaintiff returned to work, working a full day. The following day, Defendant suspended Plaintiff without pay until April 19, 2007. When Plaintiff reported to work on April 19, 2007, Defendant informed Plaintiff that he should return home. On April 23, 2007, Defendant fired Plaintiff.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must

3

describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 127 S. Ct.

1955, 1964 (2007) (*Bell Atlantic*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The

complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility

above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v.*

*Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 550 U.S.

544, 127 S.Ct. at 1965, 1973 n. 14).

## ANALYSIS

Plaintiff brings seven counts against Defendant: retaliation and/or interference under the

Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Count I); a claim

for unpaid overtime under Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*

(Count II); a claim for unpaid overtime under the Illinois Minimum Wage Law ("IMWL"), 820

ILCS 105/1, *et seq.* (Count III); violation of the Illinois Whistleblower Act ("IWA"), 740 ILCS

174/1, *et seq.* (Count IV); a claim for retaliatory discharge under Illinois common law

(Count V); a claim under the Illinois Wage Payment Collection Act ("IWPCA"), 820 ILCS

115/1, *et seq.* (Count VI); and a claim for breach of contract (Count VII). Defendant has moved

to dismiss Counts I, IV, V, VII for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, has moved to dismiss Counts III and VI for lack of subject-

matter jurisdiction pursuant to Rule 12(b)(1), and has moved for a more definite statement with

respect to Count II pursuant to Rule 12(e).

*FMLA Claim - Count I*

Plaintiff alleges that Defendant retaliated against him and/or interfered with his exercise

of his rights in violation of the FMLA when Defendant terminated his employment. Defendant

raises two objections to Plaintiff's FMLA claim. First, Defendant argues that Plaintiff has not

alleged that he had a serious medical condition that would entitle him to FMLA protection. An

employee is entitled to FMLA leave if he is afflicted with a "serious health condition" that

renders him unable to perform the functions of his job. *Burnett v. LFW Inc.*, 472 F.3d 471, 477-

78 (7th Cir. 2006). A "serious health condition" is defined as "an illness, injury, impairment, or

physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or

residential medical care facility; or (B) continuing treatment by a health care provider."

29 U.S.C.A. § 2611(11). Defendant argues that Plaintiff has not pled facts that establish that

Plaintiff's illness was sufficiently serious to trigger FMLA protection.

Plaintiff has sufficiently pled that he was entitled to leave under the FMLA. Plaintiff

alleges that his illness was sufficiently serious that he was unable to work for several days.

Indeed, Plaintiff alleges that it was Defendant who made the decision to send Plaintiff home due

to illness, thereby recognizing the seriousness of the illness. Contrary to Defendant's assertion,

Plaintiff did plead that the medical leave he requested qualified for medical leave under the

FMLA. These allegations are sufficient to survive Defendant's Rule 12(b)(6) motion.

Defendant next argues that Plaintiff failed to allege that he provided Defendant with

adequate notice that he would require time away from work for an FMLA-qualifying reason. As

Defendant admits, Plaintiff was not required to refer to the FMLA when giving notice. Rather, it

is enough that "the notice . . . succeed in alerting the employer to the seriousness of the health

5

condition." *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007). Here, Plaintiff has

alleged it was Defendant who determined that Plaintiff's illness was serious enough to prevent

him from working. Defendant's observation of Plaintiff alone may have been sufficient to put

Defendant on notice of Plaintiff's medical condition. *See Bryne v. Avon Products*, 328 F.3d 379,

381-82 (7th Cir. 2003) (employer's observation of employee in some cases may be sufficient

notice of need for FMLA leave). Therefore, Plaintiff has sufficiently pled that he provided the

notice required under the FMLA. Defendant's motion to dismiss is denied with respect to

Count I.

### Illinois Whistleblower Act - Count IV

Plaintiff alleges that Defendant's actions violated the IWA. The IWA provides that "[a]n

employer may not retaliate against an employee for disclosing information to a government or

law-enforcement agency, where the employee has reasonable cause to believe that the

information discloses a violation of a state or federal law, rule, or regulation." 740 ILCS

174/15(b). Defendant argues that Plaintiff cannot state a claim under the IWA because Plaintiff

does not allege that he reported any information to a government or law-enforcement agency.

*See Jones v. Dew*, 2006 WL 3718053 (N.D. Ill. 2006) (the IWA does not protect an employee

who disclosed information to his own company).

Plaintiff attempts to salvage the claim by citing a different section of the IWA, dealing

with retaliation for refusal to participate in an activity that would violate a state or federal law,

rule or regulation. *See* 740 ILCS 174/20. However, Plaintiff's Complaint does not allege that he

refused to participate in any activity or that Defendant retaliated against him on that basis.

Therefore, the Complaint fails to plead a violation of the IWA. Defendant's motion to dismiss is granted with respect to Count IV.

*Common-Law Retaliatory Discharge - Count V*

Under Illinois common law, an individual who had been fired for reporting illegal or improper activity to someone other than a government or law-enforcement official could bring a claim for retaliatory discharge. *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 631 (1st Dist. 2007) (*Callahan*). As set out above, to be actionable under the IWA, however, the report must have been made to the government or law enforcement. 740 ILCS 174/15. Defendant argues that the IWA preempted the common law and that retaliation for claims made to entities other than the government or law enforcement are no longer actionable. Defendant admits that the Illinois Supreme Court has not yet addressed the question of whether the IWA preempts common law and that courts have come down on both sides of the issue.

Considering the cases cited by both sides, the analysis and reasoning of the Illinois appellate court's opinion in *Callahan* on the issue of preemption is the most persuasive. In *Callahan*, the plaintiff, a nursing-home employee, brought suit for retaliatory discharge under the common law after she was fired for reporting to her supervisor and the home's administrator that a resident was being kept there against her will. *Callahan*, 374 Ill. App. 3d at 631. Noting that the IWA did not expressly abrogate existing common-law remedies, the court reasoned that any preemption was necessarily by implication. The court went on to hold that the IWA did not preempt common law:

> Repeal or preemption of an existing common-law remedy by implication is not favored. The rule has long been that a statute will not be construed as taking

7

away a common-law right existing at the time of its enactment unless the
pre-existing right is so repugnant to the statute that the survival of the
common-law right would in effect deprive the statute of its efficacy and render its
provisions nugatory.

In this case, such repugnance is not apparent. The common law provides a remedy
for employees discharged for reporting illegal activities to a government or
law-enforcement agency, employees discharged for reporting illegal activities to
their superiors, and employees discharged for refusing to work under conditions
which contravened government-mandated safety codes. Although it can
reasonably be argued that the Whistleblower Act codified the common-law
actions [for reporting illegal activities to a government or law-enforcement
agency and for refusing to work under conditions which contravened
government-mandated safety codes] nothing in the language of the statute or its
legislative history even suggests that the legislature intended to repeal or preempt
the common-law rights of an individual discharged for reporting illegal activities
to her superiors."

*Id.* at 634 (citations omitted). The court continued, "we fail to see how this statutory scheme

creates any irreconcilable conflict with the persistence of a common-law remedy in favor of

employees not covered by the statute but who, nevertheless, are discharged in retaliation for

whistleblowing activities in violation of a clearly mandated public policy." *Id.* at 634-35.

Furthermore, as noted by Judge Coar in *Lizak v. Great Masonry, Inc.*, 2009 WL 855952

(N.D. Ill. 2009) (Coar, J.) (*Lizak*), a case following *Callahan* on this precise issue, "[t]he

decisions of the Illinois Appellate Court are persuasive authority. Although those decisions do

not bind us, we shall follow them unless we have a compelling reason to believe that they have

stated the law incorrectly." *Lizak*, 2009 WL 855952 at *2 (citing *Adams v. Catrambone*,

359 F.3d 858, 862 (7th Cir.2004)). In contrast, none of the cases cited by Defendant, holding to

the contrary, address the issue in the comprehensive manner of *Callahan*. Therefore, this Court

holds that the IWA does not preempt Plaintiff's common-law retaliatory discharge claim.

Defendant next argues that even if the IWA does not preempt the common law, Plaintiff still fails to state a claim because even the common-law claims of retaliatory discharge may be brought only by employees who reported to the government or law enforcement. As discussed above, however, this argument is contrary to the holdings of at least two Illinois state courts. *See Callahan*, 374 Ill. App. 3d at 631; *Petrik v. Monarch Printing Corp.*, 111 Ill. App. 3d 502, 509 (1 Dist. 1982) (employee who was discharged for reporting perceived criminal conduct to superiors stated a claim for retaliatory discharge); *see also Nappi v. Meridian Leasing Corp.*, 859 F.Supp. 1177 (N.D. Ill. 1994) (report may be made to employer).

Defendant cites two cases in support of its position, neither of which is persuasive. The only Illinois state-court case cited by Defendant is *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12 (Ill. 1998) (*Buckner*). Contrary to Defendant's assertions, *Buckner* did not address the question of whether the discharged employee's disclosures must have been directed to law enforcement or the government. Rather, *Buckner* addressed the question of "whether a plaintiff may bring a retaliatory discharge action against the employee or agent of his former employer who effected the discharge on behalf of the employer." *Buckner*, 182 Ill.2d at 13. Therefore, *Buckner* is not instructive on this issue. The second case cited by Defendant, *Bustamante v. Tin, Inc.*, 2008 WL 360786 (N.D. Ill. 2008), did hold that the disclosure must be directed towards law enforcement or the government. However, the case is not persuasive because its holding relied exclusively on *Buckner* and another Illinois Supreme Court opinion, neither of which addressed that issue or reached that conclusion.

Therefore, the Court finds that Plaintiff has stated a claim for retaliatory discharge under Illinois common law.

9

*Breach of Contract - Count VII*

Plaintiff alleges the existence of a contract between himself and Defendant formed by the "open door" communication policy found in Defendant's employee handbook and related oral statements between himself and Defendant. The employee handbook states,

> "Defendant encourages open communication between staff members and their immediate supervisors. Suggestions and concerns should be brought to the Director's attention with suggestions for possible solutions if appropriate."

(Compl. ¶ 32.) Plaintiff alleges that Defendants breached the contract by firing him after he expressed his suggestions and concerns to his immediate supervisor.

Defendant argues that neither the "open door" statement in the employee handbook nor related oral statements made to Plaintiff by Defendant were a contract under Illinois law. In *Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 490 (Ill. 1987) (*Duldulao*), the Illinois Supreme Court held that an employee handbook creates enforceable contractual rights if the traditional requirements for contract formation – offer, acceptance and consideration – are present. With respect to the first requirement, an offer, the court stated, "the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made." *Duldulao*, 115 Ill.2d at 490. In *Duldulao*, the Court held that a policy handbook, specifying disciplinary steps an employer would take before terminating an employee, constituted a binding contract. *Id.* The court also noted that the handbook stated that it was intended to clarify the rights and duties of employees. *Id.*

Here, the "open door" statement in the employee handbook does not meet the requirements set out in *Duldulao*. The statement contains no clear promise to employees, nor does it purport to describe any rights of Defendant's employees. Rather, it set out the general

10

approach Defendant intended to take with regard to the concerns and suggestions of its workforce. Furthermore, Plaintiff cannot rely on similar oral statements to establish the existence of a contract. Plaintiff has not alleged that the substance of those statements differed materially from the "open door" policy set out in the handbook. Indeed, according to Plaintiff, they were essentially oral restatements of the policy. Additionally, the Complaint does not contain any detailed descriptions of the alleged oral statements. To be enforceable, an oral contract for employment must be clear and definite. *See Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996); *Tolmie v. United Parcel Service, Inc.*, 930 F.2d 579, 581 (7th Cir. 1991). Here, Plaintiff's allegations with respect to Defendant's alleged oral statements do not meet that standard.

Plaintiff responds, without citation to any authority, that under the Federal Rules of Civil Procedure, a plaintiff alleging breach of contract need not plead such matters as offer, acceptance and consideration. Rather, Plaintiff argues, pleading the existence of a contract, as he has done, is sufficient. Plaintiff's argument is not persuasive. Here, it is the existence of the contract that is the contested and critical issue. Plaintiff's Complaint fails to plausibly allege the formation of a contract. Plaintiff's *ipse dixit* that a contract was formed does not cure that defect.

Therefore, Defendant's motion to dismiss is granted with respect to Count VII.

*Fair Labor Standards Act - Count II*

Defendant moves for a more definite statement with respect to Plaintiff's FLSA claim. Essentially, Defendant seeks more detailed information regarding the exact hours Plaintiff claims to have worked to determine if certain affirmative defenses apply. Rule 12(e) of the Federal Rules of Civil Procedure provides that a party may move for a more definite statement when a

11

pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Plaintiff's Complaint is not so vague or ambiguous as to justify Defendant's motion. Defendant may probe the exact contours of Plaintiff's allegations through discovery. Therefore, Defendant's motion for a more definite statement is denied.

*Illinois Minimum Wage Law - Count III and Illinois Wage Payment Collection Act- Count VI*

Defendant argues that the Court should dismiss Plaintiff's claims under the IMWL and IWPCA, Counts III and VI, respectively, for lack of subject-matter jurisdiction under Rule 12(b)(1). Defendant cites 28 U.S.C. 1367(c) in support of this contention. However, Defendant does not specify which ground in § 1367(c) applies. Indeed, none appear to apply to this case. Plaintiff's claims under the IMWL and IWPCA do not appear to raise any novel or complex issues of state law, nor do they predominate over Plaintiff's other claims. The Court has not dismissed all other claims over which it has original jurisdiction, and Defendant has identified no exceptional circumstances or other compelling reasons for declining jurisdiction.

Therefore, Defendant's motion to dismiss Counts III and VI pursuant to Rule 12(b)(1) is denied.

## CONCLUSION

Defendant's motion to dismiss is granted with respect to Counts IV and VII and denied with respect to all other counts.

Dated: *October 29, 2009*

JOHN W. DARRAH
United States District Court Judge

12